UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Epigmenio Gadea Pliego,<br>and Columba Benitez Pliego,<br><br>    Plaintiffs,<br><br>v.<br><br>Federal National Mortgage Association,<br><br>    Defendant. | Civ. No. 13-2116 (JRT/JJK)<br><br><br><br>**REPORT AND RECOMMENDATION** |

William B. Butler, Esq., Butler Liberty Law, LLC, counsel for Plaintiffs.

Curt N. Trisko, Esq., and Jeffrey D. Klobucar, Esq., Schiller & Adam, P.A., counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

In this action, Plaintiffs Epigmenio Gadea Pliego and Columba Benitez Pliego seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims: (1) a quiet-title claim—i.e., a claim to determine adverse claims under Minn. Stat. § 559.01; (2) a claim for a declaratory judgment; and (3) a claim of slander of title. This matter is before the Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1, on Defendant Federal National Mortgage Association's ("Fannie Mae's") Motion to Dismiss (Doc. No. 7). This Court took the matter under advisement on the papers submitted on October 7, 2013. (Doc. No. 17.) For the reasons below, this Court

recommends that Fannie Mae's Motion to Dismiss be granted and Plaintiffs' claims be dismissed with prejudice.

## FACTS

Plaintiffs reside in and are in possession of real property located at 7208 Candlewood Drive in Brooklyn Park, Minnesota.  (Doc. No. 1, Compl. ¶ 1.) Plaintiffs acquired their interest in the property via warranty deed in 2003.  (*Id.* ¶ 2.)  On May 22, 2007, Plaintiffs executed and delivered a $242,250 promissory note to Countrywide Home Loans, Inc. ("Countrywide"), as well as a mortgage securing the note to Mortgage Electronic Registration Systems, Inc. ("MERS") (as nominee for Countrywide).  (*Id.* ¶ 4; Compl. Ex. 1.)  A printout from a MERS database currently lists Fannie Mae as an "investor" on the loan.  (Compl. ¶ 7; Compl. Ex. 2.)

On November 11, 2009, Lawrence Wilford executed an assignment of Plaintiffs' mortgage from MERS to BAC Home Loans Servicing, LP ("BAC"); that assignment was recorded in the Hennepin County Office of the County Recorder on December 14, 2009.  (Compl. Ex. 4.)  The assignment indicates that Wilford executed the assignment in his capacity as Vice President of MERS.  (*Id.*)[1] Plaintiffs appear to allege that Wilford did not have the authority to execute the

---

[1] Plaintiffs allege that the law firm Wilford & Geske, P.A., filed two notices of pendency of foreclosure proceedings and powers of attorney to foreclose mortgage – once in 2009 and once in 2010.  (*See* Compl. ¶¶ 21–22.)  No foreclosure proceeding was consummated in connection with the filing of those two documents.  Therefore, Plaintiffs cannot assert a plausible claim based on those notices.

assignment because he was actually an employee of the law firm Wilford & Geske, P.A. (Compl. ¶ 20.)[2]

On September 13, 2011, Christopher Herrera executed an assignment of Plaintiffs' mortgage from BAC to Bank of America, N.A. ("BOA"), its successor by merger; that assignment was recorded in the Hennepin County Office of the County Recorder on September 28, 2011. (Compl. ¶ 23; Compl. Ex. 7.) The assignment indicates that Herrera executed the assignment in his capacity as an assistant secretary of MERS. (Compl. Ex. 7.) It appears that this assignment was unnecessary, but it clarifies that BOA held the mortgage as successor to BAC.

On October 20, 2011, Pabla Zuniga executed a corporate assignment of Plaintiffs' mortgage from BOA to Fannie Mae; that assignment was recorded in the Hennepin County Office of the County Recorder on November 3, 2011.

---

[2] Plaintiffs do not specifically state that this is a reason that the foreclosure is invalid, *see* Compl. ¶ 34, and they do not address this argument in their opposition to Fannie Mae's motion to dismiss. Nevertheless, even if Plaintiffs contend that Wilford's alleged employment by Wilford & Geske supports their claims, such a contention lacks merit. "Nothing precludes an individual from simultaneously being an employee of one entity and an agent of another." *Gharwal v. Fed. Nat'l Mortg. Ass'n*, No. 13-CV-0685 (PJS/JSM), 2013 WL 4838904, at *3 (D. Minn. Sept. 11, 2013); *see also Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 491 (Minn. 2009) (explaining that it is MERS's usual practice to appoint employees of its members to act as its agents for the purpose of executing assignments). Therefore, the fact that Wilford was an employee of Wilford & Geske when he executed the assignment on behalf of MERS is perfectly consistent with this practice and does not establish a plausible basis for a claim that Wilford lacked authority to execute the assignment on behalf of MERS.

(Compl. Ex. 8.)  The assignment indicates that Zuniga executed the assignment in her capacity as Assistant Vice President at BOA.

On April 25, 2012, N. Kibongni Fondungallah, an attorney with the law firm of Reiter & Schiller, P.A. ("Schiller"), executed a Notice Pendency of Proceeding to Foreclose Mortgage, which was recorded with the Hennepin County Recorder on April 27, 2013.  (Compl. ¶ 25; Compl. Ex. 9.)  Foreclosure proceedings were not consummated based on this notice.

According to Plaintiff's allegations, Schiller executed a Notice of Pendency on October 1, 2012, which was thereafter recorded with the Hennepin County Recorder as Document Number A9851020.[3]

On October 31, 2012, Rebecca Graves executed a Power of Attorney to Foreclose Mortgage, authorizing Schiller to foreclose by advertisement the Plaintiffs' mortgage, and ratifying all actions taken by Schiller since September 29, 2012; that Power of Attorney was recorded in the Hennepin County Office of the County Recorder on November 13, 2012.  (Compl. ¶ 26; Compl. Ex. 10.)  The assignment indicates that Graves executed the Power of Attorney in her capacity as Loan Administration Assistant Vice President of Seterus, Inc., attorney-in-fact

---

[3]  Plaintiffs contend that Complaint Exhibit 9 supports this allegation.  However, the October 2012 Notice and Office of the County Recorder receipt are not attached as Exhibit 9 or anywhere else in the exhibits attached to the Complaint.  Fannie Mae asserts that this fourth Notice of Pendency was dated June 29, 2012, executed on July 2, 2012, and recorded on July 3, 2012, as Document Number A9807512.  (Doc. No. 9, Def.'s Mem. in Supp. of Mot. to Dismiss 4.)

for Fannie Mae.  (Compl. Ex. 10.)  Plaintiff alleges that there is no power of attorney from Fannie Mae to Seterus recorded against Plaintiffs' property.  (Compl. ¶ 26.)  As pointed out by Fannie Mae, however, the public record shows that a limited power-of-attorney form from Fannie Mae to Seterus, Inc., empowering Seterus to act as attorney-in-fact, was executed on October 12, 2011, and recorded with the Hennepin County Recorder on December 16, 2011, as Document No. A9727497.  (Doc. No. 10, Decl. of Curt N. Trisko in Supp. of Def.'s Mot. to Dismiss ("Trisko Decl.") ¶ 2, Ex. A.)

In November 2012, Fannie Mae initiated a foreclosure by advertisement, and Plaintiffs' property was sold at a sheriff's sale on December 12, 2012.  (Compl. ¶ 28; Compl. Ex. 11.)  Plaintiff's redemption period was six months and expired on June 12, 2013.  (Compl. Ex. 11.)  Plaintiffs commenced this action to invalidate the foreclosure on August 5, 2013.  (Doc. No. 1, Compl.)

Plaintiffs allege that the foreclosure was invalid because: (1) at some point before the foreclosure sale and prior to the September and October 2011 assignments referenced above, their mortgage was assigned by MERS to Fannie Mae; (2) that assignment was not recorded; and therefore, (3) the foreclosure failed to comply with Minn. Stat. § 580.02(3), "which requires all assignments of a mortgage to be recorded before a party is entitled to make a foreclosure by advertisement . . . ."  *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 59 (Minn. 2013); (*see* Compl. ¶¶ 12, 34).  In addition, Plaintiffs contend that if the October 12, 2011 Power of Attorney from Fannie Mae to Seterus is valid as to

5

Plaintiffs' property, then the October 18, 2011 assignment is invalid because it was not signed by Seterus.  (Compl. ¶ 34.)

## DISCUSSION

### I. Standard of Review

In reviewing a motion for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of

[the claim]." *Id.* at 545. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.  Analysis

### A.  Quiet Title

In their quiet-title claim, Plaintiffs seek to determine adverse claims under Minn. Stat. § 559.01. Ultimately, they assert that Fannie Mae's foreclosure of the mortgage on her home was invalid. Minnesota's quiet-title statute provides that "[a]ny person in possession of real property . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01.

Before addressing that claim, however, the Court first must address Plaintiffs' argument that they do not need to allege any reason why the foreclosure may be invalid to sufficiently plead a quiet-title claim under Minnesota law. Specifically, Plaintiffs argue that, to state a quiet-title claim under § 559.01 they need only allege that they are in possession of the property and that Fannie Mae claims an adverse interest. In addition, Plaintiffs allege that, once a defendant is sued under § 559.01, the defendant bears the burden of proving that its interest in the property is valid. The Eighth Circuit has squarely and repeatedly rejected this argument, holding that § 559.01 and the other authority

7

on which Plaintiffs rely "are only the state pleading rules; they are not state substantive standards that govern the success of a quiet title claim." *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013). In other words, the Eighth Circuit has agreed with Plaintiffs that under Minnesota pleading standards a plaintiff bringing a quiet-title action under § 559.01 needs to plead only that she is in possession of the property and that the defendant claims an adverse interest. But when a lawsuit is filed in or removed to federal court, it is the federal pleading standards—specifically, Rules 8 and 9, as interpreted by *Twombly* and *Iqbal*—that apply, not the Minnesota pleading standards. *Id.*; *see also id.* (stating that § 559.01 and other authority that plaintiff relies on "are not state substantive standards that govern the success of a quiet title claim"). In sum, the Eighth Circuit has clearly held that, to survive a Rule 12(b)(6) motion, a complaint must plead adequate facts to establish a plausible "claim that the defendants' adverse claims are *invalid* . . . ." *Id.* (emphasis added); *see also Novak v. JPMorgan Chase Bank, N.A.*, 518 F. App'x 498, 501–02 (8th Cir. 2013); *Vang v. PNC Mortg., Inc.*, 517 F. App'x 523, 526–27 (8th Cir. 2013); *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013).

      This Court must therefore consider whether Plaintiffs plausibly allege that Fannie Mae's asserted interest in their property is invalid. Again, Plaintiffs claim that the foreclosure was invalid for two reasons. First, Plaintiffs assert that someone at MERS made an unrecorded assignment of the mortgage to Fannie Mae, and under Minn. Stat. § 580.02, that unrecorded assignment precludes a

foreclosure by advertisement.  And second, Plaintiffs allege that the limited power-of-attorney form from Fannie Mae to Seterus, Inc., was executed on October 12, 2011, and recorded on December 16, 2011, which was after the Notice of Foreclosure Sale and the first date of publication on October 24, 2012.[4]

### 1. Unrecorded Assignment to Fannie Mae

Plaintiffs allege that the foreclosure was invalid because someone at MERS assigned her mortgage to Fannie Mae prior to the foreclosure sale and that assignment was not recorded.  Under Minnesota law, all assignments of the mortgage must be recorded before a mortgage holder can commence a foreclosure by advertisement.  Minn. Stat. § 580.02(3); *Ruiz*, 829 N.W.2d at 54.

---

[4] The Complaint contains a third possible basis for alleging that the foreclosure was invalid – namely, that Plaintiffs "specifically deny that [Fannie Mae] or its predecessors in interest has or had a legal right to declare a default on the Note." (Compl. ¶ 5.)  Plaintiffs also allege that Fannie Mae cannot prove a default, that Plaintiffs never borrowed money from Fannie Mae, that Plaintiffs have not defaulted on an obligation to Fannie Mae, and that Plaintiffs did not give an interest in their property to Fannie Mae.  (Compl. ¶¶ 5–6.) These allegations are mere legal conclusions of the type that the Court is not required to credit, or they are irrelevant.  Notably, Plaintiffs do not allege that they are not in default – in fact, they conspicuously fail to allege that they made the payments that they were required to make under the note – and they do not allege any other factual basis for their allegations that Fannie Mae cannot prove a default and lacks the legal right to declare a default.  And the claim that Fannie Mae had no legal right to declare a default is "based on the discredited show-me-the-note theory." *Quale v. Aurora Loan Servs., LLC*, No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013).  Further, Plaintiffs did not mention these allegations in their briefing in response to Fannie Mae's motion to dismiss.  The Court therefore need not address them further.  *See Gharwal*, 2013 WL 4838904, at *3 n.7.

The documents referenced in an attached to the Complaint show an unbroken chain of title from MERS to BAC to BOA to Fannie Mae. The Sheriff's Certificate of Sale is prima facie evidence that Fannie Mae (the foreclosing entity) complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper. Minn. Stat. § 580.19. Plaintiffs state no facts in their Complaint to rebut this evidence and none of the documents attached to their Complaint support a claim that there was an unrecorded assignment between MERS and Fannie Mae prior to the foreclosure sale.

Plaintiffs allege two bases for believing that there was an unrecorded assignment of their mortgage to Fannie Mae. First, they point to a printout from a MERS database (Compl. Ex. 2), claiming that Fannie Mae acquired its interest in the mortgage close to the time of origination because this printout shows Fannie Mae as the "investor." This screen shot was printed on August 5, 2013, over seven months after the foreclosure sale. This report does not plausibly support Plaintiffs' theory that there was an unrecorded assignment of the mortgage from MERS to Fannie Mae *before* the foreclosure. All the documents show is that as of August 5, 2013, Fannie Mae has acquired its interest in the Property, which is entirely consistent with the Assignment of Mortgage that occurred in October 2011, and was recorded in November 2011. *See Welk v. Fed. Nat'l Mortg. Ass'n*, No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *3 (D. Minn. May 17, 2013) (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page—and noting "[i]t is no surprise that Fannie Mae is listed as

having an interest in October 2012 – Fannie Mae acquired an interest from Wells Farge in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011").

Plaintiffs' second basis for claiming that there was an unrecorded assignment to Fannie Mae is a document entitled "Custodial Agreement" that allegedly is part of a "Trust Indenture."  (Compl. Ex. 3.)  This document appears to be a form contract intended for use by Fannie Mae, lenders, and document custodians, with blanks for the name of the lender.  It recites that Fannie Mae and the lender are parties to a Pool Purchase Contract that provides for Fannie Mae's purchase of certain mortgage loans.  Among other things, the agreement requires the lender to deliver to the document custodian certain documents regarding the Pool Purchase Contract loans on or before something called the "Issue Date" (which is not defined in the document).  In particular, the document requires delivery of a

> [d]uly completed and executed assignment to [Fannie Mae] of the mortgage, deed of trust, or other security instrument in form suitable for recording but not recorded with respect to each Mortgage or a duly completed and executed power of attorney to [Fannie Mae] to assign the Mortgages[.]

(Compl. Ex. 3 at 21 of 108).

Plaintiffs point to this language to contend that there must have been an assignment of their mortgage to Fannie Mae "in form suitable for recording but not recorded."  The problem with this argument, though, is that the exhibit attached to Plaintiffs' Complaint has nothing to do with Plaintiffs' loan or

11

mortgage. It is not an actual contract; it is an undated and unexecuted form, and none of its blanks are filled in. By its terms, the document only requires delivery of an assignment with respect to loans that are a part of a particular Pool Purchase Contract. But the document does not refer to any Pool Purchase Contract, much less one involving Plaintiffs' loan. Therefore, the Custodial Agreement fails to support Plaintiffs' claim because it is not for the benefit of any borrower and imposes no obligations as to the borrower. *See Segura v. Fed. Nat'l Mortg. Ass'n*, No. 13-531 (SRN/JJK), 2013 WL 3034096, at *3 (D. Minn. June 17, 2013); *Lara v. Fed. Nat'l Mort. Ass'n*, No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013). Further, Plaintiffs' theory is inconsistent with Plaintiffs own allegations. If MERS had assigned Plaintiffs' mortgage to Fannie Mae before 2009, there would be no reason for BOA to deed the property to Fannie Mae in 2012. Thus, this document does not provide a plausible basis for Plaintiffs' claim that their mortgage was part of a securitization and assigned to Fannie Mae prior to the foreclosure sale. Plaintiffs' bare allegation that there was an unrecorded assignment of their mortgage to Fannie Mae is not sufficient to state a claim. *See Gharwal*, 2013 WL 4838904, at *4–5; *Richter v. Fed. Nat'l Mortg. Ass'n*, No. 13-475 (ADM/JJG), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) ("Simply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.").

### 2. Power of Attorney

Plaintiff contends that the foreclosure is void because the Power of Attorney was not executed until after the Notice of Foreclosure Sale and the first date of publication. But the recording of the Power of Attorney, not the execution, is what is relevant. And contrary to Plaintiffs' contentions, Fannie Mae did comply with the requirements of Minn. Stat. § 580.05 with regard to the recording of the limited Power of Attorney. Minn. Stat. § 580.05 states:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, *and recorded prior to the sale* in the county where the foreclosure proceedings are had. If such attorney by employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. § 580.05 (emphasis added).

On October 12, 2011, a limited power-of-attorney form from Fannie Mae to Seterus, Inc., empowering it to act as attorney-in-fact, was executed, which was recorded with the Hennepin County Recorder on December 16, 2011, as Document No. A9727497. (Doc. No. 10, Decl. of Curt N. Trisko in Supp. of Def.'s Mot. to Dismiss ("Trisko Decl.") ¶ 2, Ex. A.)[5] Thereafter, on October 31, 2012, Rebecca Graves, as Loan Administration Assistant Vice President of Seterus,

---

[5] Plaintiffs allege that this power of attorney was not recorded against the Plaintiffs' property. (Compl. ¶ 27.) Plaintiff, however, has not explained how this allegation is relevant. Section 580.05 requires only that the power of attorney be recorded prior to the sale *in the county where the foreclosure proceedings are had.*

Inc., executed a Power of Attorney to Foreclose Mortgage, authorizing Schiller to foreclose by advertisement the Plaintiffs' mortgage, and ratifying all actions taken by Schiller since September 29, 2012; that Power of Attorney was recorded in the Hennepin County Office of the County Recorder on November 13, 2012. (Compl. ¶ 26; Compl. Ex. 10.)  The foreclosure sale on the Property occurred on December 12, 2012.  (Compl. ¶ 28; Compl. Ex. 11.)  As such, the Power of Attorney to foreclose the mortgage was recorded prior to the sale of the Property at the Sheriff's Sale, as required by Minn. Stat. § 580.05.  *See Smith v. Wells Fargo Bank, N.A.*, No. 13-439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013) ("Plaintiff claims that no valid power of attorney existed when the law firm of Shapiro & Zielke, LLP, created the Notice of Sale and caused it to be published, because the Power of Attorney was executed after the date of the Notice of Sale and after the date of the first publication of the Notice of Sale.  However, the relevant statute does not dictate when the power of attorney must be executed.  Rather, it requires only that the power of attorney be recorded prior to the foreclosure sale.  Here, the Power of Attorney was recorded on April 26, 2012, and the property was sold at a foreclosure sale on August 7, 2012.  Thus, Defendant complied with the statutory requirements.").

### 3. Unclean Hands

Finally, Plaintiffs' quiet-title claim also fails for the independent reason that Plaintiffs have unclean hands.  In Minnesota, "[a]ctions to quiet title and to determine adverse claims are equitable actions."  *Haubrich v. U.S. Bank, N.A.*,

No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012) (citations omitted), *aff'd*, 720 F.3d 979 (8th Cir. 2013).  A "plaintiff who seeks equity must come into court with clean hands." *Id.* (citations omitted).  Plaintiffs defaulted on their mortgage loan by failing to make promised payments, eventually leading to the foreclosure they now challenge after the sale of the property, the transfer of title, and the expiration of the redemption period.  Plaintiffs "seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands."  *Stilp v. HSBC Bank USA, N.A.*, No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), *aff'd*, ___F. App'x ___, 2013 WL 5340399 (8th Cir. Sept. 25, 2013); *see also Haubrich*, 2012 WL 3612023, at *3, *aff'd*, 720 F.3d 979 (8th Cir. 2013); *Novak v. JP Morgan Chase Bank, N.A.*, No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), *aff'd*, 518 F. App'x 498 (8th Cir. 2013) ("Plaintiffs now live in the houses without making payment, and they seek to declare their mortgages invalid after defaulting.  In short, plaintiffs seek equitable relief from an outcome of their own creation."); *Butler v. Fed. Nat. Mortg. Ass'n*, No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *7 (D. Minn. May 15, 2013); *Yang Mee Thao-Xiong v. Am. Mortg. Corp.*, No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013).  Thus, Plaintiffs cannot state an equitable quiet-title claim.

Based on all of the above reasons, this Court recommends dismissal of Plaintiffs' quiet-title claim.

### B. Slander of Title

Plaintiffs assert a slander-of-title claim against Fannie Mae in Count 3. A slander-of-title claim requires that (1) a defendant made a false statement; (2) then published that false statement to others; (3) defendant maliciously published the statement; and (4) the publication caused plaintiffs a pecuniary loss in the form of special damages. *Paidar v. Hughes*, 615 N.W.2d 276, 279–80 (Minn. 2000). Plaintiffs allege that Fannie Mae drafted and recorded documents that "are false, invalid, and were not executed by legally authorized persons," and that Fannie Mae "knew or should have known that the documents were false." (Compl. ¶ 50.)

Plaintiffs have not adequately pleaded the elements of a slander-of-title claim, much less met the heightened pleading standard required under Fed. R. Civ. P. 9(b) for such claims. *See Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1032 (8th Cir. 2012) (stating that Rule 9(b) applies to slander-of-title claims). Plaintiffs were required to make specific factual allegations regarding the circumstances of any alleged false statement. *See id.* But Plaintiffs' Complaint is void of any facts from which this Court could infer that Fannie Mae made any false statement or acted with malice. Plaintiffs have also failed to plead any facts indicating that they relied on any alleged misrepresentation. *See Welk*, 850 F. Supp. 2d at 994. Thus, Plaintiff has failed to state a slander-of-title claim that is plausible on its face, and dismissal is appropriate. *See Lara*, 2013 WL 3088728, at *3; *Pope v. Fed. Home Loan Mortg. Corp.*, No. 12-3094

(SRN/JJG), 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); *Haubrich*, 2012 WL 3612023, at *6.

### C. Declaratory Judgment

The basis for the declaratory judgment claim is unclear but it appears to be based on the same allegations as the failed quiet-title claim. Therefore, for the same reasons stated above, the declaratory judgment claim, Count 2, must fail. *See Lara*, 2013 WL 3088728, at *3. "A claim for declaratory judgment must be supported by a substantive legal right." *Id.* (citations omitted). "Having failed to state a substantive claim, the [Complaint] also fails to state a claim for a declaratory judgment." *Id.*

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Federal National Mortgage Association's Motion to Dismiss (Doc. No. 7), be **GRANTED**; and

2. This case be **DISMISSED WITH PREJUDICE**.


Date: January 7, 2014

                                          *s/ Jeffrey J. Keyes*
                                          JEFFREY J. KEYES
                                          United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 21, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure

to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.